AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify*<br>*the person by name and address)*<br>USPS Priority Mail parcel bearing tracking<br>label number 9505 5112 5414 5191 8181 02,<br>currently in the custody of USPIS<br>in San Bernardino, CA | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 5:25-mj-00483 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843(b), and 846 | See attached affidavit |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

_____
*Applicant's signature*

U.S. Postal Inspector, Gabriel Rodriguez
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
*Judge's signature*

City and state: <u>Riverside, CA</u>

Honorable Shashi H. Kewalramani, U.S. Magistrate Judge
*Printed name and title*

AUSA: Cory L. Burleson

## <u>AFFIDAVIT</u>

I, Gabriel Rodriguez, being duly sworn, declare and state as follows:

## I. <u>PURPOSE OF AFFIDAVIT</u>

1.   This affidavit is made in support of a search warrant for the following parcel, as described in Attachment A, and currently in the custody of the United States Postal Inspection Service ("USPIS") in San Bernardino, California:

a.   USPS Priority Mail medium flat rate parcel bearing tracking label number 9505 5112 5414 5191 8181 02, weighing approximately 0.875 pounds (the "SECOND PARCEL").  The return address for the SECOND PARCEL is "Annie Nicpon 28 Newton St, Buffalo, NY 14212."  The recipient address listed for the SECOND PARCEL is "Rosalie Navarro 8380 Highridge PL, Rancho Cucamonga, CA 91730."  The SECOND PARCEL was postmarked in Buffalo, New York, on July 10, 2025, with a postage fee of $19.15.

2.   The requested search warrant seeks authorization to seize the fruits, instrumentalities, and evidence of violations of Title 21, United States Code, Sections 841(a)(1) (Possession with Intent to Distribute a Controlled Substance), 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance), and 846 (Conspiracy) (collectively, the "Subject Offenses"), as described in Attachment B.  Attachments A and B are incorporated herein by reference.

3.     The facts set forth in this affidavit are based on my
personal observations, my training and experience, and
information obtained from various law enforcement personnel and
witnesses.  This affidavit is intended to show merely that there
is sufficient probable cause for the requested warrants and does
not purport to set forth all my knowledge of or investigation
into this matter.  Unless specifically indicated otherwise, all
conversations and statements described in this affidavit are
related in substance and in part only, and all dates are on or
about the specified date.

## II. AFFIANT BACKGROUND

4.     I am Postal Inspector with USPIS and have been so
employed since February 2016.  I am currently assigned to the
Contraband Interdiction and Investigations South Team of the Los
Angeles Division, which is responsible for investigating drug
trafficking involving the United States Mail.

5.     I graduated from the USPIS's Federal Law Enforcement
Training Academy in Potomac, Maryland.  In addition, I have
received extensive narcotics training and have experience
investigating violations of federal narcotics and money
laundering laws.  I have been involved in various electronic
surveillance methods, and the debriefing of informants and
witnesses, as well as others who have knowledge of the
manufacturing, distribution, transportation, storage, and
importation of controlled substances, and the laundering of drug
proceeds.  I have participated in many aspects of drug
investigations, including investigations into the smuggling of

illegal drugs, and money laundering. I am familiar with
narcotics traffickers' methods of operation, including the
manufacturing, storage, transportation, and distribution of
narcotics, the collection of money that represents the proceeds
of narcotics trafficking, and money laundering.  I am familiar
with how drug traffickers use counter-surveillance techniques to
avoid detection by law enforcement.

### III.  STATEMENT OF PROBABLE CAUSE

6.    On July 15, 2025, the Honorable Shashi H. Kewalramani,
United States Magistrate Judge for the Central District of
California, issued a search warrant for a parcel (hereinafter,
the "First Parcel") in case number 5:25-mj-00481.  The
application for that search warrant, including the supporting
affidavit, are attached as Exhibit A to this application and
incorporated herein by reference.

7.    On July 15, 2025, Postal Inspectors executed the
search warrant on the First Parcel, which is referred to as the
"SUBJECT PARCEL" in Exhibit A.  The First Parcel contained
$2,880.00 in U.S. currency.  The money was packaged and hidden
inside a neck brace, and the neck brace was inside its retail
packaging.  The money was placed inside a Ziplock-style plastic
bag and wrapped in a paper towel.  The money included three
rubber-banded bundles of cash in various denominations.  Photos
of the First Parcel and its contents are included below.







8.    After the First Parcel was opened, the money was packaged back inside the box and prepared for a controlled delivery.  On July 15, 2025, postal inspectors and other law enforcement officers executed a controlled delivery of the First Parcel to the intended address.[1]

9.    As detailed in paragraphs 59 and 60 of Exhibit A, the SECOND PARCEL was mailed from the retail area of the Buffalo

---

[1] The Honorable Shashi H. Kewalramani also authorized the installation and use of a tracking device on the First Parcel, in case number 5:25-mj-00482.  However, given the markings on the inside of the First Parcel and the lack of packing materials, Postal Inspectors could not conceal the tracking device inside parcel, and therefore, it was not installed.

Processing and Distribution Center Post Office in Buffalo, New York, on July 10, 2025--at the same time, from the same place, by the same people, to the same recipient (though at a different address) as the First Parcel.

10.  As detailed in paragraphs 53 through 59 in Exhibit A, the First Parcel and the SECOND PARCEL were mailed a few days after three suspected narcotics parcels were mailed from San Bernardino County to different addresses in Buffalo, New York.

11.  The SECOND PARCEL was located and seized by Postal Inspectors in San Bernardino County on July 15, 2025.

12.  Given that the SECOND PARCEL was mailed at the same time, from the same place, by the same people, to the same recipient as the First Parcel, and based on the other information discovered in this investigation to date (as discussed in Exhibit A), there is probable cause to believe that the SECOND PARCEL also contains cash, money orders, some other type of monetary instrument, and/or controlled substances.

///

///

## IV. <u>CONCLUSION</u>

13.   For the reasons set forth in this affidavit, there is probable cause to believe that the SECOND PARCEL, as described in Attachment A, contains evidence, fruits, and instrumentalities of violations of the Subject Offenses, as described in Attachment B.


Attested to by the applicant in
accordance with the requirements of
Fed. R. Crim. P. 4.1 by telephone on
this _____ day of July 2025.


_____
HONORABLE SHASHI H. KEWALRAMANI
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

<u>PARCEL TO BE SEARCHED</u>

The parcel to be searched is a USPS Priority Mail medium flat rate parcel bearing tracking label number 9505 5112 5414 5191 8181 02, weighing approximately 0.875 pounds (the "SECOND PARCEL"). The return address for the SECOND PARCEL is "Annie Nicpon 28 Newton St, Buffalo, NY 14212." The recipient address listed for the SECOND PARCEL is "Rosalie Navarro 8380 Highridge PL, Rancho Cucamonga, CA 91730." The SECOND PARCEL was postmarked in Buffalo, New York, on July 10, 2025, with a postage fee of $19.15.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

The following are the items to be seized from the SECOND PARCEL, which constitute the fruits, instrumentalities, and evidence of violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance), 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance), and 846 (Conspiracy):

a.   Any controlled substances, including marijuana.

b.   Currency, money orders, bank checks, or similar monetary instruments in aggregate quantities over $1,000; and

c.   Any associated packaging.

# EXHIBIT A

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) |
| USPS Priority Mail parcel bearing tracking | ) |
| label number 9505 5112 5414 5191 8181 33, | ) |
| and currently secured with the USPIS | ) |
| in San Bernardino, CA | ) |
| | ) |

Case No. 5:25-mj-00481

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843(b), and 846 | See attached affidavit |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

_____
*Applicant's signature*

U.S. Postal Inspector, Gabriel Rodriguez
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
*Judge's signature*

City and state: <u>Riverside, CA</u>          Honorable Shashi H. Kewalramani, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA: Cory L. Burleson

## **AFFIDAVIT**

I, Gabriel Rodriguez, being duly sworn, declare and state as follows:

### **I.  PURPOSE OF AFFIDAVIT**

1.    This affidavit is made in support of a search warrant for the following parcel, as described in Attachment A, and currently in the custody of the United States Postal Inspection Service ("USPIS") in San Bernardino, California:

a.    USPS Priority Mail parcel in a medium flat rate box bearing tracking number 9505 5112 5414 5191 8181 33, weighing approximately 1.0 pound (the "SUBJECT PARCEL").  The return address listed for the SUBJECT PARCEL is "Johnasia Hamilton 114 Central Ave, Buffalo NY, 14206."  The recipient address listed for the SUBJECT PARCEL is "Rosalie Navarro 5529 Bonnie Brae St Montclair CA 91763."  The SUBJECT PARCEL was postmarked in Buffalo, New York, on July 10, 2025, with a postage fee of $19.15.

2.    The items to be seized constitute the fruits, instrumentalities, and evidence of violations of Title 21, United States Code, Sections 841(a)(1) (Possession with Intent to Distribute a Controlled Substance), 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance), and 846 (Conspiracy) (collectively, the "Subject Offenses"), as described in Attachment B.  Attachments A and B are incorporated herein by reference.

3.     This affidavit is also made in support of an application for an anticipatory warrant authorizing the installation, use, monitoring, and maintenance of a Global Positioning System ("GPS") tracking device on the SUBJECT PARCEL, if the SUBJECT PARCEL is found to contain cash, money orders, and/or some other type of monetary instrument.

4.     Based on the facts set forth below, there is probable cause to believe that the SUBJECT PARCEL contains and is being used to facilitate violations of the Subject Offenses. Specifically, there is probable cause to believe that the SUBJECT PARCEL is being used to send U.S. currency, which is believed to be proceeds of narcotics sales, through the U.S. mail.  Further, as explained below, there is probable cause to believe that the use of a GPS tracking device on the SUBJECT PARCEL would provide evidence of the Subject Offenses, including, but not limited to, information regarding individuals handling the SUBJECT PARCEL and locations the parcel travels.

5.     The facts set forth in this affidavit are based on my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates are on or about the specified date.

## II. <u>SUMMARY OF PROBABLE CAUSE</u>

6.    On July 7, 2025, two individuals, Marylou Vega ("VEGA") and Steve Lopez, Jr. ("LOPEZ"), who are associated with a drug trafficking organization described herein, mailed three parcels from different post offices in San Bernardino County to addresses in Buffalo, New York.  The three parcels were similar in size, and two of them were mailed to addresses other parcels linked to this organization have been mailed.

7.    On July 9, 2025, law enforcement personnel in Buffalo conducted a controlled delivery operation on one of the three parcels mailed.  The parcel was delivered to an individual, who later gave the parcel to Yuminiquetashe Toney ("TONEY"), who is also associated with this drug trafficking organization, and John Hamilton ("Hamilton").  The next day, on July 10, 2025, TONEY and Hamilton mailed two parcels, one of which was the SUBJECT PARCEL, to Rosalie Navarro ("NAVARRO") at different addresses in San Bernardino County.

8.    On July 14, 2025, Postal Inspectors seized the SUBJECT PARCEL in San Bernardino County, and a narcotics detection canine gave a positive alert to the parcel, indicating that the parcel and/or its contents were saturated with the odor of illegal narcotics.

9.    Based on this information, this investigation to date, Postal Inspectors believe that the SUBJECT PARCEL likely contains cash, which is proceeds from the sale of narcotics.  If the SUBJECT PARCEL is found to contain money, placing a tracking

device inside the parcel is likely to lead to additional
evidence, information regarding individuals handling the SUBJECT
PARCEL and locations the parcel travels.

### III. <u>AFFIANT BACKGROUND</u>

10.  I am Postal Inspector with USPIS and have been so
employed since February 2016.  I am currently assigned to the
Contraband Interdiction and Investigations South Team of the Los
Angeles Division, which is responsible for investigating drug
trafficking involving the United States Mail.

11.  I graduated from the USPIS's Federal Law Enforcement
Training Academy in Potomac, Maryland.  In addition, I have
received extensive narcotics training and have experience
investigating violations of federal narcotics and money
laundering laws.  I have been involved in various electronic
surveillance methods, and the debriefing of informants and
witnesses, as well as others who have knowledge of the
manufacturing, distribution, transportation, storage, and
importation of controlled substances, and the laundering of drug
proceeds.  I have participated in many aspects of drug
investigations, including investigations into the smuggling of
illegal drugs, and money laundering. I am familiar with
narcotics traffickers' methods of operation, including the
manufacturing, storage, transportation, and distribution of
narcotics, the collection of money that represents the proceeds
of narcotics trafficking, and money laundering.  I am familiar
with how drug traffickers use counter-surveillance techniques to
avoid detection by law enforcement.

## IV. <u>TRAINING AND EXPERIENCE</u>

12.    Based on my training and discussions with experienced
Postal Inspectors, I know that Postal Inspectors have been
conducting investigations of drug trafficking via USPS Express
Mail and Priority Mail since the mid-1980s.  In particular, they
began conducting organized interdictions of Express Mail and
Priority Mail parcels suspected of containing controlled
substances and proceeds from the sale of controlled substances
in Los Angeles, California, in the early 1990s.  Along with
conducting organized interdictions, Postal Inspectors also
regularly examine and investigate Express Mail and Priority Mail
parcels throughout the year.  During the 1990s, Postal
Inspectors observed that the trend was for drug traffickers to
send controlled substances and proceeds from the sale of
controlled substances using boxes, with the proceeds in the form
of cash.  Although Postal Inspectors still see the use of boxes
for controlled substances and cash, there has been a gradual
change over the years toward the current trend of smaller boxes,
flat cardboard envelopes, and tyvek envelopes, with proceeds
from the sale of controlled substances converted to money
orders.  By using money orders, drug traffickers are able to
send large dollar amounts in compact form, using much smaller
conveyances that lend a sense of legitimacy to the parcel.

13.    From my training, personal experience, and the
collective experiences related to me by Postal Inspectors on my
team who specialize in investigations relating to the mailing of
controlled substances and drug proceeds, I am aware that the

greater Los Angeles area is a major source area for controlled substances.  As such, controlled substances are frequently transported from the greater Los Angeles area via the United States Mail, and the proceeds from the sale of the controlled substances are frequently returned to the greater Los Angeles area via the United States Mail.  These proceeds are generally in large amounts of money over $1,000.

14.  I also know based on my training and experience that drug traffickers will often use one of three USPS services: Priority Mail Express Service, which is the overnight/next day delivery mail service; Priority Mail Service, which is the two-to-three day delivery mail service; and Ground Advantage, which is the three-to-five day delivery mail service.  Drug traffickers use Priority Mail Express delivery services because of their speed, reliability, and the ability to track the package's progress to the intended delivery point.  Drug traffickers often use Priority Mail and Ground Advantage delivery services because they allow drug traffickers more time for travel between states if they are following their shipments to their destinations for distribution.  Like Priority Mail Express, Priority Mail and Ground Advantage also allows drug traffickers to track the package's progress to the intended delivery point.

15.  Based on my training and experiences and information learned during discussions with Postal Inspectors, I know that drug traffickers often use fictitious or incomplete names and/or addresses in an effort to conceal their identity from law

enforcement.  Indeed, it is my experience that when real
addresses are used, it is only to lend a legitimate appearance
to the parcel and is almost always paired with a false name.

### V.  STATEMENT OF PROBABLE CAUSE

16.  The following information is based on my review of
various business records, including USPS business records; my
review of database records, including records from law
enforcement and public databases; my conversations with other
law enforcement personnel; and my knowledge of USPIS'
investigation to date:

### A.  Summary of Angulo DTO Investigation

17.  Beginning in or around May 2024, USPIS has been
investigating a drug trafficking organization (the "Angulo DTO")
that has shipped numerous narcotics from Los Angeles and San
Bernardino Counties to Oklahoma, New York, and Missouri since May
2024.  Through its investigation, USPIS has identified several
mailers and recipients using the United States Mail to distribute
narcotics.  To date, USPIS believes more than fifty parcels,
containing either narcotics or proceeds from narcotics sales, are
linked to this DTO, and eight of those parcels have been seized.
In those eight parcels, USPIS has seized approximately 3,194
grams of cocaine, 6,919 grams of methamphetamine, and 355 grams
of fentanyl.

18.  Based on the investigation to date, this DTO appears
to be centered around Eddie Angulo ("ANGULO"), who is currently
incarcerated at Folsom State Prison, a California Department of
Corrections and Rehabilitation ("CDCR") facility in Represa,

7

California.  ANGULO has personally inquired with USPS about the status of multiple suspected narcotics parcels involved in this investigation.  Moreover, as part of this DTO, ANGULO also appears to be coordinating with several individuals in Southern California and elsewhere, including:

       a.   NAVARRO, who appears to be ANGULO's girlfriend and whose address on file with the California DMV is 5529 Bonnie Brae St, Montclair, California 91763.  Based on the investigation, it appears that NAVARRO has mailed suspected narcotics parcels, received parcels suspected to contain money as proceeds for narcotics shipments, and inquired with USPS about the status of multiple parcels.

       b.   Danielle Angulo ("DANIELLE"), ANGULO's mother, whose California DMV address is in Fontana, California.  Based on the investigation, it appears that DANIELLE has mailed suspected narcotics parcels and received money transfers[1] believed to be payments for narcotics shipments.

       c.   Daniel Bustos ("BUSTOS"), who appears to be a friend of ANGULO and whose California DMV address is in Fontana, California.  Based on the investigation, it appears that BUSTOS has travelled from California to New York and Oklahoma to send

---

[1] The money transfers discussed herein are based on information in a money transfer database available to law enforcement.  The database includes various information about transfers sent or received in California, Arizona, New Mexico, Texas, and Mexico using money transfer services, like Western Union.  The database provides law enforcement with information an individual supplies a third-party money transfer service to execute a money transfer, including the individual's name and address, the transaction date and amount, the location the funds were sent to, and the name of the recipient.

and facilitate money transfers to other co-conspirators in
California, and BUSTOS has received money transfers from others
associated with this DTO.

        d.    VEGA, whose California DMV address is in San
Bernardino, California 92404, was involved with three suspected
narcotics parcel shipments from three different post offices in
San Bernardino County to Buffalo, New York, on July 7, 2025.
Moreover, a phone number associated with, and believed to be
used by, VEGA was in contact with ANGULO's phone number
approximately 195 times between January 1 and June 3, 2025.

        e.    LOPEZ, who is believed to be VEGA's relative,
accompanied VEGA and was involved with the mailed of the three
suspected narcotics parcels mailed on July 7, 2025.  It also
appears that LOPEZ mailed an additional package on July 8, 2025.

        f.    TONEY, who appears to reside in Buffalo, New
York.  Since November 2024, TONEY has sent at least six money
transfers to DANIELLE, BUSTOS, and ANGULO's sister (Edrena
Angulo), and many of those transfers appear to have been sent
around the time a suspected narcotics parcel were mailed to an
address in Buffalo, New York.

    **B.**    **NAVARRO Identified**

    19.    According to USPS business records, between May 10,
2024, and November 15, 2024, approximately 19 parcels were mailed
from post offices in Los Angeles and San Bernardino Counties to
two similar addresses in Ponca City, Oklahoma: 3200 N 14th St Lot
17 and 3200 N 14th St Lot 21.

20.  Two of those parcels were searched and seized and found to contain over a kilogram of cocaine:

a.  On or about May 21, 2024, a USPS Priority Mail Express Parcel bearing tracking number EL645856678US (the "78US Parcel") was mailed from a post office in Pomona, California, to 3200 N 14th St Lot 17 in Ponca City, Oklahoma.  On May 23, 2024, Postal Inspector Jared Lonborg in Oklahoma seized the 78US Parcel and obtained a federal search warrant in case number 4:24-MJ-420 in the Western District of Oklahoma.  The 78US Parcel contained approximately 1,043 grams of cocaine.

b.  On November 15, 2024, a USPS Priority Mail Express Parcel bearing tracking number EI616949457US (the "57US Parcel") was mailed from a post office in Upland, California, to 3200 N 14th St Lot 21 in Ponca City, Oklahoma.  Postal Inspector Brian Hess, in Oklahoma, seized the 57US Parcel and obtained a federal search warrant for the parcel in case number MJ-24-853-CMS in the Western District of Oklahoma.  The 57US Parcel contained approximately 1,116 grams of cocaine.

21.  On November 19, 2024, a female who identified herself as "Stephanie" called USPS twice regarding the 57US Parcel using a phone number ending in 1936 (the "1936 Number").  According to USPS records, the 1936 Number also called USPS on August 21, 2024, inquiring about a parcel that had been shipped from Upland to Kansas City, Missouri, on August 12, 2024.  During the August 21 call, a female, who sounds similar to the female that called on November 19, identified herself as "Jesse."

22.   Subscriber records for the 1936 Number do not include subscriber information.  However, toll records for the 1936 Number show contacts with a number ending in 9316 (the "9316 Number").  Subscriber records for the 9316 Number identify NAVARRO as the subscriber.

23.   NAVARRO's California DMV address is 5529 Bonnie Brae St, Montclair, California 91763.  Commercial databases also associate NAVARRO with the address at 8380 Highridge Pl, Rancho Cucamonga, California.

24.   According to USPS records, between September 23 and October 15, 2024, there were approximately five parcels mailed from Ponca City, Oklahoma, to either the 5529 Bonnie Brae or the 8380 Highridge addresses.  These five parcels were usually mailed within a few days (before or after) of the parcels described above that were mailed from Southern California to Ponca City.  None of the parcels from Ponca City to the 5529 Bonnie Brae or the 8380 Highridge addresses were seized, but based on my training and experience, I believe that these parcels likely contained monetary payment for and/or proceeds of narcotics sales.

### C.   ANGULO Identified

25.   During a deconfliction of phone records with the Drug Enforcement Agency ("DEA"), USPIS learned that the 9316 Number had multiple calls into a CDCR facility.  CDCR records showed that NAVARRO has visited ANGULO at Folsom State Prison.

26.   USPIS obtained recordings of prison calls involving ANGULO, and in one of the calls with a female, who ANGULO refers

to as "Rosalie," the female's voice appears to match the voice of the female on the USPS calls described above.  Accordingly, Postal Inspectors believe that NAVARRO used the 1936 Number to call USPS about the 57US Parcel and the parcel mailed on August 12, 2024.

27.  Toll records also show that the 9316 Number contacted a number ending in 2320 (the "2320 Number") approximately 102 times between January 1 and February 7, 2025.

28.  Subscriber records for the 2320 Number do not include subscriber information.  Toll records for the 2320 Number, between January 1 and June 3, 2025, showed numerous contacts between the 2320 Number and BUSTOS, DANIELLE, Edrena Angulo, and others associated with and believed to be involved in the Angulo DTO.

29.  On or about May 28, 2025, USPIS Task Force Officer ("TFO") Zachary Sumpter obtained a California state search warrant for, among other things, GPS location data of the 2320 Number.  AT&T records in response to that warrant showed that the 2320 Number was locating at Folsom State Prison.  Given the location data and the call records, Postal Inspectors believe that, at least through June 3, 2025, ANGULO was using the 2320 Number.[2]

**D.    Buffalo, New York-Related Parcels**

30.  On or about November 6, 2024, BUSTOS flew from Los Angeles to Buffalo, New York.

---

[2] Based on the investigation to date, it appears that ANGULO has access to a cell phone while he is incarcerated at Folsom State Prison.

31.   On or about November 9, 2024, a money transfer database shows that BUSTOS sent a money transfer for $2,500 to Edrena Angulo from a Walmart in Cheektoway, New York. Approximately eight minutes later, TONEY, who provided an address of 268 Stanton St, Buffalo, New York, wired $2,500 to DANIELLE from the same Walmart.

32.   According to USPS records, from November 12, 2024, to January 13, 2025, approximately eight parcels (ranging in weight from 3.06 pounds to 10.75 pounds) were mailed from Los Angeles and San Bernardino Counties to two similar addresses in Buffalo, New York: 263 Stanton St and 267 Stanton St.  Both addresses are on the same street and are close in number to the address that TONEY provided with the money transfer on November 9, 2024.  For example, on January 13, 2025, a USPS Priority Express Mail Parcel bearing tracking number EL320413684US (the "84US Parcel") was mailed from the Chino Hills Post Office to 263 Stanton St, Buffalo, NY, and a USPS Priority Express Mail Parcel bearing tracking number EL320413698US (the "98US Parcel") was mailed from the Chino Hills Post Office to 267 Stanton St, Buffalo, New York.

33.   On January 15, 2025, the 2320 Number called USPS regarding the 98US Parcel.  A review of a recording of the call revealed a male voice, believed to be ANGULO, stating he mailed two parcels.  During the call, ANGULO also asked about the 84US Parcel, and he provided a different phone number, which law enforcement associated with another individual involved with the Angulo DTO, to receive messages about the 84US Parcel.

13

34.   The following day, on January 16, 2025, a female voice using the 1936 Number, believed to be used by NAVARRO, called USPS regarding the 98US Parcel.  NAVARRO said that her husband had mailed the parcel, and she attempted to change the return address but was unsuccessful.

**E.   2 Olga Place in Buffalo, New York**

35.   According to USPS records, between February 11 and May 19, 2025, approximately seven parcels were mailed from Los Angeles and San Bernardino Counties to 2 Olga Place in Buffalo, New York.

36.   For instance, on February 11, 2025, a parcel weighing approximately 4.06 pounds was mailed from the Upland Post Office to the Olga Place address.

37.   Three days later, on February 18, 2025, TONEY sent a $2,500 money transfer to BUSTOS.

38.   On March 3, 2025, a USPS Priority Express Mail Parcel weighing 3.06 pounds and bearing tracking number EI587808021US (the "21US Parcel") was mailed from the Upland Post Office to the Olga Place address.

39.   The next two days, on March 4 and 5, 2025, the same female voice using the 1936 Number, but who identified herself as "Marie," called USPS regarding the 21US Parcel.

40.   Also on March 5, 2025, TFO Sumpter obtained and executed a search warrant in case number 2:25-MJ-01184 in the Central District of California.  The 21US Parcel contained approximately 1,075 grams of suspected cocaine.  Postal Inspectors obtained surveillance video associated with the date

and time of the mailing from the Upland Post Office.  An unknown female was see mailing the 21US Parcel.

41.   On March 11, 2025, a parcel weighing approximately 5.56 pounds was mailed from the Monrovia Post Office to the Olga Place address.

42.   On March 17, 2025, a parcel weighing approximately 3.31 pounds was mailed from the San Bernardino Uptown Post Office to the Olga Place address.  Postal Inspectors obtained surveillance video associated with the date and time of the mailing from the Uptown Post Office.  A female who arrived and departed in black Dodge Avenger mailed this parcel.  Postal Inspectors obtained information from an automated license plate reader ("LPR") database regarding the same Dodge Avenger from March 17, 2025.  According to California DMV records, the vehicle liability for this Dodge Avenger was released to DANIELLE on January 25, 2025.  Postal Inspectors then obtained DANIELLE's DMV photo and determined that she had mailed the March 17 parcel.

43.   On March 29, April 7, and April 7, 2025, TONEY sent money transfers to DANIELLE for $2,200, $2,500, and $2,500, respectively.

44.   On April 9, 2025, a parcel weighing approximately 3.5 pounds was mailed from the San Bernardino Delrosa Post Office to the Olga Place address.  Postal Inspectors obtained surveillance video associated with the date and time of the mailing from the Delrosa Post Office, which showed that a female, who was later identified as Monique Pena ("Pena"), mailed the parcel.

45.    On April 23, 2025, a parcel weighing approximately
3.44 pounds was mailed from the San Bernardino Delrosa Post
Office to the Olga Place address.  Postal Inspectors obtained
surveillance video associated with the date and time of the
mailing from the Delrosa Post Office, which showed that Pena
mailed the parcel.

46.    On April 23, 2025, Pena also mailed two parcels to
Tulsa, Oklahoma, from the post office in Patton, California.
These parcels were seized and searched pursuant to federal search
warrants obtained in Oklahoma, and one contained approximately
1,417 grams of methamphetamine and the other contained
approximately 2,367 grams of methamphetamine.

47.    During one of Pena's post office trips, Postal
Inspectors were able to obtain a partial license plate number for
the Toyota Tundra that Pena drove to and from the Delrosa Post
Office.  Automated LPR information showed the truck parked at
3456 Broadmoor Avenue in San Bernardino.  A commercial law
enforcement search showed that Pena and VEGA were associated with
the Broadmoor address.

48.    Postal Inspectors also associated the phone number
ending in 4850 with VEGA.  Toll records for the 2320 Number
(ANGULO) show that, between January 1 and June 3, 2025, the 2320
Number was in contact with the number ending in 4850
approximately 195 times.

49.    On May 19, 2025, a USPS Priority Mail Parcel bearing
tracking number 9505512597075139683952 (the "3952 Parcel")
weighing approximately 3.44 pounds was mailed from the San

Bernardino Delrosa Post Office to the Olga Place address.  Postal
Inspectors obtained surveillance video associated with the date
and time of the mailing from the Delrosa Post Office, which
showed that Pena mailed the parcel.

50.    That same day, Pena also mailed another USPS Priority
Mail Parcel bearing tracking number 9505514311175139552794 (the
"2794 Parcel") from the Patton Post Office to 3200 N 14th St Lot
17 in Ponca City, Oklahoma.

51.    On May 20, 2025, I obtained and executed a search
warrant for the 3952 and 2794 Parcels in case number 5:25-MJ-
003341 in the Central District of California.  The 3952 Parcel
contained approximately 2,690 grams of methamphetamine and
approximately 355 grams of fentanyl.  The 2794 Parcel contained
approximately 445 grams of methamphetamine.

**F.    NAVARRO Mailed a Parcel to Ponca City**

52.    On June 11, 2025, a USPS Priority Mail Express Parcel
bearing tracking number EI583074183US (the "83US Parcel") was
mailed from a U.S. Post Office in Upland, California, to 529
Virginia Ave, Ponca City, Oklahoma.  Postal Inspectors obtained
and reviewed surveillance video from the Upland Post Office from
the date and time the 83US Parcel was mailed.  Based on the
surveillance footage, Postal Inspectors believe that the female
that mailed the 83US Parcel was NAVARRO.

**G.    VEGA and LOPEZ Mail Three Parcels to Buffalo on July 7**

53.    On July 7, 2025, a USPS Priority Mail Express Parcel
weighing 8 pounds 10 ounces bearing tracking number EI621945016US
(the "16US Parcel") was mailed from the Chino Hills Post Office

to a "Norma Price" at the Olga Place address.  Postal Inspectors
obtained surveillance video associated with the date and time of
the mailing from the Chino Hills Post Office.  Postal Inspectors
identified VEGA and a male, later identified as LOPEZ, mailing
the parcel.[3]  VEGA and LOPEZ arrived and departed the post office
in a silver Buick sport utility rental that was rented from Hertz
Rental Car.

54.    That same day, after mailing the 16US Parcel, LOPEZ
went to Rancho Cucamonga Post Office in the silver Buick to mail
a second parcel, this one to 30 Newton Street in Buffalo, New
York.  VEGA was not seen on surveillance footage mailing this
parcel.

55.    Later the same day, after mailing the parcel in Rancho
Cucamonga, LOPEZ and VEGA went to the Ontario Post Office in the
silver Buick to mail a third parcel.  This parcel was addressed
to 28 Newton Street in Buffalo, New York, which is an address
where other parcels associated with the Angulo DTO have been
mailed.  According to commercial database records, the 28 Newton
Street address is associated with John Hamilton.

56.    All three parcels were mailed in medium flat rate
boxes and similar in weight.  Given that VEGA and LOPEZ mailed
the parcels from three different post offices on the same day,
while driving a rental car, in my training and experience, I
believe that the three parcels likely contain narcotics.

---

[3] Information from a commercial database associated VEGA
with an address on North H Street in San Bernardino.  Records
also associated LOPEZ with that address, and the California DMV
photo for LOPEZ matched the male mailing the 16US Parcel.

### H.  Controlled Delivery and Surveillance on the 16US Parcel

57.  On July 9, 2025, USPIS and DEA personnel in Buffalo executed a controlled delivery of the 16US Parcel at the Olga address.[4]  An individual that law enforcement identified as Norma Price received the 16US Parcel.

58.  A short time later, law enforcement followed Price when she left the Olga Address with the 16US Parcel.  Law enforcement followed Price and saw her meet up and provide the 16US Parcel to TONEY.  TONEY was with John Hamilton when she received the 16 US Parcel.

### I.  The SUBJECT PARCEL and a Second Parcel Mailed to NAVARRO

59.  The following day, on July 10, 2025, the SUBJECT PARCEL and a second parcel were mailed from the retail area of the Buffalo Processing and Distribution Center Post Office.  As explained above, the SUBJECT PARCEL was addressed to NAVARRO at the 5529 Bonnie Brae address in Montclair.  The second parcel was also addressed to NAVARRO, but at the 8380 Highridge address in Rancho Cucamonga.  The return address for the second parcel was 28 Newton Street in Buffalo, New York.

60.  Postal Inspectors obtained surveillance video associated with the date and time of the mailings of the SUBJECT PARCEL and the second parcel.  The surveillance video shows TONEY and Hamilton each mailed one of the two parcels.

---

[4] Postal Inspectors did not search or obtain a search warrant to learn the contents of the 16US Parcel.  If inspectors had found narcotics in the parcel, they would not have been able to proceed with the controlled delivery operation.

61.  On July 14, 2025, Postal Inspectors located and seized the SUBJECT PARCEL at a post office in San Bernardino County. As of the filing of this affidavit, the second parcel has not been located.

**J.  Positive Canine Alert on the SUBJECT PARCEL**

62.  On July 14, 2025, San Bernardino County Sheriff's Department Detective Brian Francis and his narcotics-detection canine, "Kilo," conducted an exterior examination of the SUBJECT PARCEL.  Detective Francis informed me that Kilo gave a positive alert to the SUBJECT PARCEL, indicating the presence of controlled substances or other items that emitted the odor of controlled substances in the SUBJECT PARCEL.  Attached hereto as Exhibit 1, which I incorporate fully herein by reference, is a declaration provided by Detective Francis regarding Kilo's training and history in detecting controlled substances and investigation of the SUBJECT PARCEL.

## VI. REQUESTED ORDERS

**A.  Installation of Tracking Device and Access to SUBJECT PARCEL During Monitoring Period If Repairs, Maintenance, and Replacement of the GPS Tracker Become Necessary**

63.  If the SUBJECT PARCEL is found to contain cash, money orders, and/or some other type of monetary instrument, pursuant to Federal Rule of Criminal Procedure 41(b)(4), I request permission to install a GPS tracking device on the SUBJECT PARCEL  and to track the SUBJECT PARCEL within and outside of this district.  Although the SUBJECT PARCEL may travel outside of the Central District of California, the installation of the

tracking device will occur only when the SUBJECT PARCEL is
within the Central District of California.

64.   Based on my training and experience, GPS tracking
devices can require repair, replacement, or other maintenance
during a prescribed monitoring period.  If such repair,
replacement, or maintenance becomes required, it may become
necessary to access the SUBJECT PARCEL during the monitoring
period solely and exclusively to repair or maintain the GPS
tracking device.  Because the SUBJECT PARCEL may be located on
private property, it may be necessary to enter onto private
property and/or move the SUBJECT PARCEL in order to effect the
installation, repair and maintenance, replacement, and removal
of the tracking device.  If agents access the SUBJECT PARCEL
during the monitoring period to install, repair, replace, or
maintain the GPS tracking device and see drugs or other
contraband, agents will not seize the items without further
search warrant.

**B.   Delayed Notice**

65.   Pursuant to Fed. R. Crim. P. 41(f)(2)(c), (f)(3), and
18 U.S.C. § 3103a, I also request permission to delay service of
the warrant on the owner of the SUBJECT PARCEL for a period of
30 days beyond the end of the disclosure period.  Based on my
training and experience, and my investigation of this matter, I
believe that reasonable cause exists to delay service of the
warrant for a period of 30 days beyond the end of the disclosure
period, because immediate notification of the warrant is likely
to have the adverse result of placing the investigation in

serious jeopardy.  The investigation is ongoing, and providing immediate notification of the warrant may cause the targets, and other co-conspirators to change their methods of operation, destroy evidence, or flee.

### VII. **CONCLUSION**

66.  Based on the above, I believe there is probable cause to believe that the SUBJECT PARCEL described in Attachment A contains evidence of violations of the Subject Offenses. Moreover, if the SUBJECT PARCEL is found to contain cash, money orders, and/or some other type of monetary instrument, there is also probable cause to believe that information concerning the movements of the SUBJECT PARCEL will provide evidence of the Subject Offenses.


Attested to by the applicant in
accordance with the requirements of
Fed. R. Crim. P. 4.1 by telephone on
this _____ day of July 2025.


_____
HONORABLE SHASHI H. KEWALRAMANI
UNITED STATES MAGISTRATE JUDGE

**Attachment A**

<u>PARCELS TO BE SEARCHED</u>

The SUBJECT PARCEL is a USPS Priority Mail parcel bearing tracking label number 9505 5112 5414 5191 8181 33, weighing approximately one pound.  The SUBJECT PARCEL is a USPS Priority Mail Medium Flat Rate box.  The return address listed for the SUBJECT PARCEL is "Johnasia Hamilton 114 Central Ave, Buffalo NY, 14206."  The recipient address listed for the SUBJECT PARCEL is: "Rosalie Navarro 5529 Bonnie Brae St Montclair CA 91763." The parcel was postmarked in Buffalo, New York on July 10, 2025, with a postage fee of $19.15.

## **ATTACHMENT B**

<u>ITEMS TO BE SEIZED</u>

The following are the items to be seized from the SUBJECT PARCEL, which constitute the fruits, instrumentalities, and evidence of violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance), 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance), and 846 (Conspiracy):

a.   Any controlled substances, including marijuana.

b.   Currency, money orders, bank checks, or similar monetary instruments in aggregate quantities over $1,000; and

c.   Any associated packaging.

# EXHIBIT 1

**EXPERTISE OF DECLARANT**

Your affiant (hereafter referred to as "I" or "me") Your Affiant is Brian Francis, a Detective for the San Bernardino County Sheriff's Department currently assigned to the San Bernardino Sheriff's Department Inland Regional Narcotics Enforcement Division (IRNET).

I, Brian Francis, being duly sworn, hereby declare under penalty of perjury and state as follows: Your affiant was hired in October 2012 by the San Bernardino County Sheriff's Department and entered the San Bernardino County Sheriff Basic Academy. I graduated with Academic Honors and received my Basic POST Certificate in March of 2013.

I was promoted to Detective on February 15, 2022, and assigned to the Inland Regional Narcotics Enforcement Team (IRNET). On June 9, 2023, I was certified as a "Single Purpose Narcotics Detection" officer with K9 Kilo as my partner.

**NARCOTICS/CANINE EXPERTISE**

I have attended a 120-hour course at Vohne Liche Kennels in narcotics detection. I attend this course with K9 Kilo. Kilo and I are a certified narcotics detection team through the California Narcotics Canine Association (CNCA). We attend monthly maintenance training sponsored by Vohne Liche Kennels, weekly training with the Inland Empire Police Canine Association, and Kilo and I train daily.  Since successfully completing the K9 handler training course, Kilo is responsible for the seizure of several hundred pounds of methamphetamine and cocaine, over 20lbs of heroin, and over 100,000 Fentanyl Pills.

**PARCEL INTERDICTION**

On 07/14/25, USPI Gabriel Rodriguez requested that my narcotics detection K9-Kilo and I assist in a narcotics parcel investigation at the United States Postal Service, located at 390 West 5th Street, San Bernardino, California 92402. During that investigation, Kilo alerted to the odor of narcotics emitting from the following USPS parcel: #9505 5112 5414 5191 8181 33.

On 07/14/25, at approximately 1345 hours, while conducting a parcel inspection at the above location, the parcel was placed on the ground by USPI Gabriel Rodriguez, in the upstairs terrace area of the building.  The parcel was placed against one of several structural columns with two other like parcels separated by at least four to six feet. I deployed my narcotics detection K9 Kilo in the direction of the three parcels. Upon reaching USPS parcel: #9505 5112 5414 5191 8181 33, Kilo sat down indicating a positive "alert" that the package and/or contents in the package was saturated with the odor of illegal narcotics.

USPI Gabriel Rodriguez took custody of the parcel which Kilo positively alerted to an odor of narcotics being present.


*Brian Francis*

Detective Brian Francis
San Bernardino Sheriff's Department